1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

DANIEL RIGGS and BRYAN HARMER,

Plaintiffs,

v.

SCOTT DAVIS, et al.,

Defendants.

Case No. 3:24-cv-00443-ART-CLB

SEVERANCE ORDER

10    Plaintiffs Daniel Riggs and Bryan Harmer filed this civil rights case under
11    42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act
12    ("RLUIPA") when they were both in the custody of the Nevada Department of
13    Corrections ("NDOC") at Lovelock Correctional Center ("LCC"). Plaintiffs initiated
14    this case by filing a joint complaint (ECF No. 1-1 at 1–52) and motion to exceed
15    the 30-page limit for complaints. (ECF No. 1-1 at 53–55.) Both Plaintiffs have
16    applied to proceed *in forma pauperis* ("IFP"). (ECF No. 1 (Riggs); ECF No. 22
17    (Harmer).) Plaintiffs also jointly filed a notice of related cases (ECF No. 4) and an
18    objection to two Magistrate Judge orders. (ECF No. 10.)

19    After initiating the case, Harmer was released on parole. (ECF No. 11; ECF
20    No. 20 at 4.) Since then, Plaintiffs have not submitted any filings signed by both
21    of them individually, as required by Rule 11(a) of the Federal Rules of Civil
22    Procedure. Each Plaintiff, however, has continued to submit filings on his own.
23    (ECF Nos. 12–18, 23, 25 (Riggs); ECF No. 21 (Harmer).) And Harmer jointly
24    submitted a filing with LCC inmate Robert Graham in which Harmer seeks to (1)
25    remain as a plaintiff for purposes of the requests for monetary relief and (2)
26    substitute Graham as a plaintiff to assume Harmer's interests for purposes of the
27    requests for injunctive relief. (ECF No. 20.) Inmate Graham then submitted a
28    filing on his own. (ECF No. 24.)

1

Based on the record in this case, and as explained in more detail below, the Court finds that Riggs and Harmer cannot litigate this case as co-plaintiffs in an orderly and expeditious manner. The Court therefore exercises its discretion to sever Harmer from this case. Riggs will remain as the only plaintiff in this case, and the Clerk of Court will open a new case under a separate case number with Harmer as the only plaintiff. The joint complaint filed by Riggs and Harmer in this case is dismissed without prejudice, and Riggs and Harmer are each granted leave to file an amended complaint reflecting this severance in their respective cases. Inmate Graham, who has never been a party to this case, is also free to file his own case. The Court now temporarily defers the matter of the filing fee, severs Riggs and Harmer's claims, and addresses the pending motions.

## I.    BACKGROUND

### A.    Summary of Complaint

In the joint complaint, Riggs and Harmer allege violations of their religious rights at LCC under RLUIPA, the First Amendment, and the Fourteenth Amendment. (ECF No. 1-1 at 11 (RLUIPA); *id.* at 28 (Free Exercise Clause); *id.* at 32 (Establishment Clause); *id.* at 36 (Equal Protection Clause); *id.* at 39 (Conspiracy).) The Defendants are seven NDOC officials (Director James Dzurenda, former Director Charles Daniels, and current or former deputy directors Does 1–5) and fifteen LCC officials (Chaplain Scott Davis, Associate Warden Kara LeGrand, former Warden Tim Garrett, Warden Nethanjah Breitenbach, food service manager Ellis, Lt. Preston, Lt. Clark, Lt. Harroun, Sgt. Martin, Sgt. Gentry, senior correctional officer ("CO") Govea, CO Etcheberry, CO Wilcoxen, CO Hensley, and CO Martinez). (*Id.* at 1–4.) Riggs and Harmer request injunctive relief, judicial monitoring of Defendants for three years, referral to the Department of Justice, declaratory relief, and monetary damages. (*Id.* at 46–52.)

The joint complaint alleges that Riggs is Catholic and Harmer is a member of the Church of Jesus Christ of Latter-day Saints ("LDS"). (*Id.* at 4; *id.* at 25–26

(listing sincerely held religious beliefs).) At the time the joint complaint was filed, prison officials allegedly recognized Harmer as a "facilitator" for LDS services, and before Defendant Davis became chaplain, they recognized Riggs as a "facilitator" for Catholic services as well. (*Id.* at 10.) Chaplain Davis allegedly revoked Riggs' formal designation at some point, though Riggs continues to help organize Catholic services informally. (*Id.*) Riggs and Harmer allege that there is a "shadow government" comprised of all Defendants (except food service manager Ellis) and many non-defendants who work together to enforce Protestantism as the official religion at LCC and deny other faith groups their religious freedoms. (*Id.* at 5–8, 32, 39.) Riggs and Harmer bring this case "in their personal capacities and on behalf of other similarly-situated" inmates at LCC who are current or prospective members of the Catholic and LDS churches. (*Id.* at 10.)

Riggs and Harmer allege that Defendants have taken actions that violated both of their religious rights each year since 2018. The following is a partial summary of the joint allegations. In 2018, Defendants cancelled all Catholic and LDS services other than the primary Sunday service. (*Id.* at 12.) In 2019, Defendants established a Bible college at LCC teaching the doctrines of the Independent Baptist Church, which hold that Catholic and LDS doctrine are false. (*Id.* at 14, 33–34.) In 2020, Defendants cancelled all religious services at LCC and closed the chapel while continuing to operate the Bible college and broadcasting sermons recorded by Chaplain Davis on a loop on a closed-circuit channel accessible to inmates. (*Id.* at 14–15.) In 2021, Defendants prevented outside officials from the Catholic and LDS church to enter LCC, such that Riggs and Harmer could not participate in certain religious practices. (*Id.* at 16–17.) In 2022, Defendants reopened the chapel, created a new chapel schedule that set the primary service for Catholic and LDS inmates on days other than Sunday, and allotted several time slots for Protestant inmates to participate in religious practices that were not available to Catholic and LDS inmates. (*Id.* at 17–18.) In

2023, Defendants instituted two different month-long bans of music equipment for religious services that excepted certain non-Catholic and non-LDS faith groups, and they set up a new "call-out list" system for attending chapel that was selectively enforced against Catholic and LDS inmates and resulted in Riggs and Harmer missing Easter service. (*Id.* at 19–21.) In 2024, Defendants denied separate requests from Riggs and Harmer to hold religious services for Catholic and LDS inmates in the chapel on Easter Sunday. (*Id.* at 22.) When the joint complaint was filed, Protestant inmates had several opportunities to attend services and participate in programs throughout the week, while Catholic and LDS inmates could attend service only one day a week (still not Sunday). (*Id.* at 23–24, 34, 37.) Chaplain Davis has stated on several occasions that chapel is closed on Sundays "because he runs a church that has services on Sundays." (*Id.* at 30.) And the Bible college established in 2019 is advertised to inmates as a means to demonstrate official program participation in a way that no other faith program is. (*Id.* at 33–34.)

The joint complaint also alleges that Defendants' actions affected each Plaintiff separately. For Riggs, the joint complaint alleges that: (1) Defendants cancelled three weekly Catholic services in May 2024 and one in September 2024 (*id.* at 22, 29); (2) Catholic inmates are not allowed to receive communion wine at mass (*id.* at 25); (3) in September 2024, Defendants ordered prison guards to search the chapel, and during that search, a guard intentionally placed a Catholic crucifix upside down (*id.* at 29); (4) Catholic inmates are subject to more intrusive searches when entering the chapel than other faith groups, and they often get cursed at during the search (*id.* at 31, 44); and (5) when Defendant Davis became chaplain, he held a meeting for inmate faith-group facilitators that Riggs attended, and Riggs was forced to submit to Davis beginning the meeting with a prayer in the "Protestant Christian fashion." (*Id.* at 34–35.)

As for Harmer, the joint complaint alleges that: (1) Defendants cancelled

nineteen weekly LDS services in 2023 (*id.* at 21); (2) Harmer went on a "common fare" diet that accommodated his religious beliefs in April 2023, but that diet was changed in October 2023 such that it no longer complied with Harmer's religious beliefs (*id.* at 24, 38); and (3) Chaplain Davis's refusal to work with outside sponsors led to LDS inmates being unable to obtain a copy of the Book of Mormon for over a year between 2022 and 2023. (*Id.* at 27.)

### B.    Other Filings

With the joint complaint, Riggs and Harmer filed a motion to exceed the 30-page limit for complaints. (ECF No. 1-1 at 53–55.) They also filed a notice of related cases, pointing to 3:18-cv-551-MMD-CLB and 3:19-cv-196-MMD-CSD to request that this case be reassigned to Judge Du. (ECF No. 4 at 4, 7.)

Inmate Thomas Burdsal filed two copies of a notice of related cases. (ECF Nos. 5, 6.) On November 26, 2024, the Magistrate Judge entered an order striking Burdsal's notices. (ECF No. 7.) Inmate Brandon Green then filed a notice of related cases. (ECF No. 8.) On December 6, 2024, the Magistrate Judge entered an order striking Green's notice. (ECF No. 9.) On December 12, 2024, Riggs and Harmer filed an objection to the orders striking Burdsal and Green's notices. (ECF No. 10.)

Harmer then updated his address to a residential address in anticipation of being released on parole. (ECF No. 11; ECF No. 20 at 4.)

Since Harmer's release on parole, Riggs has submitted six unique filings that he signed himself, without Harmer.[1] Riggs filed five motions on February 18, 2025, including: (1) a 40-page motion for a temporary restraining order ("TRO") and preliminary injunction ("PI") (ECF Nos. 12, 13); (2) a motion to exceed the 24-page limit for non-summary judgment motions (ECF No. 17); and (3) a motion to expedite screening and waive early mediation. (ECF Nos. 14, 15.) At the same

---

[1] Three filings are docketed twice. (ECF Nos. 12 & 13, 14 & 15, 23 & 25.)

time, Riggs also filed two motions reflecting that Riggs and Harmer had been experiencing communication challenges since Harmer's release on parole: (1) a motion asking the Court to order the LCC law librarian to provide Riggs of full copies of all filings by Harmer (ECF No. 16); and (2) a motion asking the Court to (a) order prison and parole officials to allow Riggs and Harmer to communicate by "phone and/or mail" and (b) direct the mailroom and LCC law librarian to treat mail between Riggs and Harmer as "legal mail." (ECF No. 18.) Later, Riggs filed a notice requesting to treat his motion for a TRO and PI as an emergency motion. (ECF Nos. 23, 25.)[2]

On March 31, 2025, Harmer submitted two filings, both without Riggs. One of these filings he signed himself—a purported "Joinder" of the motion for a TRO and PI that Riggs filed about forty days prior. (ECF No. 21.) Harmer also submitted a filing signed by himself and LCC inmate Robert Graham—a "Motion to Substitute Robert Graham for LDS Worship Leader [Injunctive Relief only] and to Amend Caption." (ECF No. 20 ("motion to substitute").) In this motion, Harmer seeks to (1) remain as a plaintiff for purposes of the requests for monetary relief and (2) substitute Graham as a plaintiff to assume Harmer's interests for purposes of the requests for injunctive relief under Federal Rule of Civil Procedure 25(c) and/or 25(d).[3] (Id.)

On April 3, 2025, Inmate Graham submitted a filing that he signed himself, without Riggs or Harmer—a 30-page purported "Joinder" of Riggs' motion for a TRO and PI. (ECF No. 24.) In this filing, Graham refers to himself as either (1) "the substituted putative plaintiff as the LDS faith worship group leader, who has replaced Bryan Harmer in that capacity at [LCC] as his successor-in-interest by way of transfer of all rights in this case pertaining to injunctive remedies required

---

[2] One copy was filed electronically (ECF No. 23), and one by mail. (ECF No. 25.)

[3] The motion mistakenly cites Rule 26, but it correctly quotes the provisions of Rule 25. (See ECF No. 20 at 3.)

to protect the LDS worship group going forward," or, in the event that the Court has not granted Harmer's motion to substitute, (2) a person "appear[ing] herein for Bryan Harmer . . . providing the details . . . in support of his Joinder." (*Id.* at 1–2.)

## II. SEVERANCE OF CLAIMS AND PLAINTIFFS

Rule 20 permits multi-plaintiff actions, including actions brought by inmates. *See* Fed. R. Civ. P. 20(a)(1) (allowing multiple plaintiffs where (A) they assert a joint right to relief arising out of the same underlying transaction(s) or occurrence(s) and (B) a common question of law or fact will arise); *Johnson v. High Desert State Prison*, 127 F.4th 123, 125 (9th Cir. 2025). But joinder under Rule 20 is permissive, so even if the rule's requirements are met, district courts must consider if joinder "comport[s] with the principles of fundamental fairness' or would result in prejudice to either side." *Johnson*, 127 F.4th at 134 (citations and quotation marks omitted). That is because Rule 20 "is designed to promote judicial economy, and reduce inconvenience, delay, and added expense." *Id.* (quoting *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997)). Therefore, district courts have the "'inherent power' to deny joinder if it would undermine 'the orderly and expeditious disposition' of the case." *Id.* (quoting *Dietz v. Bouldin*, 579 U.S. 40, 45 (2016)).

The Ninth Circuit recently clarified that, while a district court has broad discretion in applying Rule 20, it must exercise that discretion based on evidence in the record of the case before it rather than "hypothetical concerns" that apply to any joint litigation by *pro se* inmates. *See id.* at 134–35. In doing so, however, the Ninth Circuit specifically acknowledged that it is appropriate to sever one prisoner-plaintiff from another where the record shows that a prisoner-plaintiff is "transferred or released" after the case is filed and/or "face[s] communication challenges" with the other prisoner-plaintiff. *See id.* at 135 (citing Fed. R. Civ. P. 21) ("While Plaintiffs *might* be transferred or released and *might* face

communication challenges, these hypothetical concerns were not actually reflected in the record before the district court. And, if these hypotheticals ever came to fruition, the district court can then sever Plaintiffs from the lawsuit."); *see also id.* (noting that courts may consider if "facts in the record support the inference that one of the prisoners will be released during the pendency of the lawsuit" and if "the prisoners already failed to comply with filing requirements such that a court can infer that the prisoners actually do face communication challenges").

Here, the record before the Court establishes that Riggs and Harmer cannot litigate this case as co-plaintiffs in an orderly and expeditious manner. Riggs and Harmer filed this case when they were both prisoners at LCC. Less than three months later, Harmer was released on parole. Riggs and Harmer then faced the types of communication challenges that might be expected in these circumstances, as reflected by Riggs' own communication-related motions (*see* ECF Nos. 16, 18) and the fact that neither Riggs nor Harmer has submitted a filing signed by the other since Harmer's release. (*See* ECF Nos. 12–18, 23, 25 (Riggs); ECF Nos. 20–21 (Harmer).) Rule 11(a)'s requirement for *pro se* co-plaintiffs to personally sign every filing they submit is no mere technicality, as it works to maintain the well-established rule that a *pro se* party cannot pursue "claims on behalf of others in a representative capacity."[4] *See Simon v. Hartford Life, Inc.*, 546 F.3d 661, 664–65 (9th Cir. 2008) (collecting cases).

Harmer's attempt to substitute Inmate Graham as a plaintiff in his place for purposes of injunctive relief only (ECF No. 20) does not alter this conclusion. Even setting aside that Riggs did not sign the motion to substitute, Harmer's reliance on Rule 25(c) and 25(d) is misplaced. Rule 25(c) permits a successor-in-interest to substitute for or join the party from whom they received an interest.

---

[4] The exception to this rule, allowing for specific statutory authorization to the contrary, does not apply here. *See Simon*, 546 F.3d at 664 n.6.

*See* Fed. R. Civ. P. 25(c). "Whether a transfer of interest has occurred is a question of state law." *Nationstar Mortg. LLC v. Fiesta Del Norte Homeowners Assoc.*, No. 2:16-cv-497-APG-BNW, 2020 WL 10787496, at *1 (D. Nev. May 13, 2020). And Harmer has not adequately explained how his release, which necessarily required him to relinquish his position as an LDS faith group leader at LCC, transferred a legal interest under Nevada law to Graham, who purportedly assumed a position as an LDS faith group leader in Harmer's stead. Neither Harmer nor Graham (nor Riggs, for that matter) can bring claims representing a class of prisoners. *See Simon*, 546 F.3d at 664–65. Additionally, Rule 25(c) allows "a discretionary determination by the trial court" to act if "the transferee's presence would facilitate the conduct of the litigation." *In re Bernal*, 207 F.3d 595, 598 (9th Cir. 2000) (quoting 7C Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 1958 (2d ed.)). And Graham's limited joinder in this case would not facilitate this litigation because it would not alleviate the practical impediments to joint litigation that Riggs and Harmer have faced since Harmer's release.

Rule 25(d), meanwhile, provides that a public officer's successor is automatically substituted as a party when that officer is a party in their official capacity and ceases to hold office while an action is pending. *See* Fed. R. Civ. P. 25(d). But Harmer was not a "public officer" within the meaning of this rule by virtue of his position an LDS faith leader at LCC. *See Depenbrock v. Parke*, No. 3:20-cv-00492-ART-CSD, 2022 WL 20173287, at *2 (D. Nev. Nov. 28, 2022), *report and recommendation adopted*, No. 3:20-cv-00492-ART-CSD, 2023 WL 4078482 (D. Nev. June 16, 2023) (referring to the advisory committee notes for Rule 25 and Nevada law to "define[] a 'public officer' as a person elected or appointed to a position which: '(a) is established by the Constitution of the State of Nevada, a statute of this State or a charter or ordinance of any county, city or other political subdivision; and (b) involves the exercise of a public power, trust or duty'").

In sum, this case provides a real-world example of the circumstances that the Ninth Circuit set out as supporting severance in *Johnson*. Harmer's attempt to add Inmate Graham as a party does not change that. The Court therefore finds that the orderly and expeditious disposition of the case is best served by denying the permissive joinder of Riggs and Harmer. The Court exercises its discretion to sever Harmer from this case. *See* Fed. R. Civ. P. 21. And as a result of this severance, the Court dismisses the joint complaint filed by Riggs and Harmer without prejudice to each Plaintiff filing an amended complaint that contains only his own claims in his own respective case. Inmate Graham, who has never been a party to this case, is free to file his own case as well.

## III.    LEAVE TO AMEND

The Court grants each of Riggs and Harmer leave to file his own amended complaint—Riggs in this case, and Harmer in the new case that will be opened under a separate case number as a result of this order. The amended complaint filed in each case must contain claims belonging only to the plaintiff in that case.

If Riggs or Harmer chooses to file an amended complaint, he must do so within 30 days from the date of this order. If either Riggs or Harmer does not file an amended complaint, his action will be subject to dismissal without prejudice.

Riggs and Harmer are advised that an amended complaint replaces a prior complaint, so any amended complaint must be complete in itself. *See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("The fact that a party was named in the original complaint is irrelevant; an amended pleading supersedes the original."). This means that any amended complaint must contain all claims, Defendants, and factual allegations that either Riggs or Harmer intends to pursue in his respective lawsuit. Riggs and Harmer should file any amended complaint on this Court's approved prisoner-civil-rights form and title it "First Amended Complaint." Riggs and Harmer should follow the instructions on the form to clearly identify all Defendants in his case, clearly

10

describe what each specific Defendant (by name) did to violate his rights, and concisely state the facts supporting his claims in his own words without citing legal authority or argument.

## IV.  MOTIONS

In light of this order severing Harmer's claims into a separate case and dismissing the joint complaint filed by Riggs and Harmer, the following motions are denied as moot: the joint motion to exceed the 30-page limit for complaints (ECF No. 1-1 at 53–55); Riggs' motion to expedite screening and waive early mediation (ECF Nos. 14, 15); Riggs' motions concerning communication challenges with Harmer (ECF Nos. 16, 18); and Harmer's motion to substitute. (ECF No. 20.)

The joint objection to the Magistrate Judge's orders (ECF No. 10), requesting to reinstate the stricken notices of related cases, is granted in part and denied in part. The portion of the objection challenging the November 26, 2024, order striking Burdsal's notices is denied as untimely. *See* Fed. R. Civ. P. 72(a) (requiring objections to be filed within 14 days). However, the portion of the objection challenging the December 6, 2024, order striking Green's notice is granted. The Magistrate Judge's order struck Green's notice of related cases as in violation of GO 1021-05 and because it was filed by a non-party.

GO 2021-05 section 3(d) states:

"Parties must not file "notices" or "letters" with the Court unless it is to notify the Court of procedural changes such as changes of address or notices of a change in counsel. Parties must not use notices or letters to ask the Court to rule on a motion. A request for the Court to rule on something must be filed as a motion. Improperly filed "notices" or "letters" will be stricken from the docket.

Local Rule 42-1(a) states:

A party who has reason to believe that an action on file or about to be filed is related to another action on file (whether active or terminated) must file in each action and serve on all parties in each action a notice of related

11

1
2
3

> cases. This notice must set forth the title and case number of each possibly related action, together with a brief statement of their relationship and the reasons why assignment to a single district judge or magistrate judge is desirable.

4    The Court agrees with Plaintiffs that under Local Rule 42-1, a party must

5 file a notice of related cases, in each action believed to be related. The Court does

6 not interpret GO 2021-05 to preclude a pro se inmate litigant from filing a notice

7 pursuant to LR 42-1. And while non-parties generally may not file documents in

8 an action, LR 42-1 expressly provides that a party having reason to believe that

9 cases are related must file the notice in each action. The Court will therefore grant

10 the objection on this ground and order the clerk to unstrike Green's notice.

11    Riggs' motion for a TRO and PI is denied without prejudice. Riggs filed this

12 motion in anticipation of Easter, asking the Court to grant all injunctive relief

13 sought in the joint complaint and order LCC officials to allow Catholic and LDS

14 inmates to hold religious services by the week before Easter and then hold

15 services in the chapel on Easter Sunday, April 20, 2025.[5] (ECF No. 12 at 39–40.)

16    Injunctive relief, whether temporary or permanent, is an "extraordinary

17 remedy, never awarded as of right." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7,

18 24 (2008). "A plaintiff seeking a preliminary injunction must establish that he is

19 likely to succeed on the merits, that he is likely to suffer irreparable harm in the

20 absence of preliminary relief, that the balance of equities tips in his favor, and

21 that an injunction is in the public interest." *Am. Trucking Ass'ns, Inc. v. City of*

22

23
24
25
26
27
28

---

[5] The Court recognizes that this date has already passed, but it notes that the conclusion reached in this order was equally applicable when Riggs filed the motion for a TRO and PI on February 18, 2025. Riggs and Harmer's filings from February 18 onward, attempting to continue litigating this case as co-plaintiffs despite being unable to communicate as prisoner and parolee, only served to delay the case and any pending motions. Additionally, the Court reiterates that Riggs was the only plaintiff who signed the motion for a TRO and PI, so it was improper at the time it was filed. *See* Fed. R. Civ. P. 11(a). Harmer did not attempt to join this motion until he submitted a separate filing about forty days later. (*See* ECF No. 21.)

*L.A.*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20). Furthermore, under the Prison Litigation Reform Act, preliminary injunctive relief must be "narrowly drawn," must "extend no further than necessary to correct the harm," and must be "the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2). Here, because the complaint in this case is being dismissed, Riggs has not established a likelihood of success on the merits. And "when a plaintiff has failed to show the likelihood of success on the merits," the Court "need not consider the remaining three [factors]." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc) (citations and quotation marks omitted). If Riggs files an amended complaint containing only his own claims, then he may also file a renewed motion for injunctive relief, and the Court will consider it in due course.

In light of this ruling denying Riggs' motion for a TRO and PI without prejudice, the following motions are denied as moot: Riggs' motion to exceed the 24-page limit for non-summary judgment motions (ECF No. 17); and Riggs' notice, docketed as a motion, requesting to treat his motion for a TRO and PI as an emergency motion. (ECF No. 23.)

## V.    CONCLUSION

It is therefore ordered that the claims of Plaintiff Riggs and Plaintiff Harmer are severed into two separate actions.

The Clerk of Court is kindly directed to administratively open a new case assigned to the undersigned judge with Bryan Harmer as the only Plaintiff.

The Clerk of Court is further directed to file the joint complaint (ECF No. 1-1 at 1–52) in this case.

The Clerk of Court is further directed to file this order, a copy of the joint complaint (ECF No. 1-1 at 1–52), and Harmer's pending IFP application (ECF No. 22) in the new case.

It is further ordered that the joint complaint (ECF No. 1 at 1–52) is

dismissed without prejudice.

It is further ordered that the joint motion to exceed the 30-page limit for complaints (ECF No. 1-1 at 53–55) is denied as moot.

It is further ordered that the joint objection to two Magistrate Judge orders (ECF No. 10) is granted in part and denied in part. The Clerk of Court is directed to unstrike Green's notice of related cases. (ECF No. 8.)

### A.    With Respect to Plaintiff Riggs and This Case

It is further ordered that a decision on Riggs' IFP application (ECF No. 1) is deferred.

It is further ordered that Riggs has 30 days from the date of this order to file an amended complaint in this case, containing only his own claims.

The Clerk of Court is further directed to send Riggs the approved form for filing a § 1983 complaint, instructions for the same, and a copy of the joint complaint. (ECF No. 1-1 at 1–52.)

It is further ordered that, if Riggs does not file an amended complaint containing only his own claims in this case within 30 days, this action will be subject to dismissal without prejudice.

It is further ordered that Riggs' motion to expedite screening and waive early mediation (ECF Nos. 14, 15) and his motions concerning communication challenges with Harmer (ECF Nos. 16, 18) are denied as moot.

It is further ordered that Riggs' motion for a TRO and PI (ECF Nos. 12, 13) is denied without prejudice.

It is further ordered that Riggs' motion to exceed the 24-page limit for non-summary judgment motions (ECF No. 17) and his notice, docketed as a motion, requesting to treat his motion for a TRO and PI as an emergency motion (ECF No. 23) are denied as moot.

### B.    With Respect to Plaintiff Harmer and the New Case

It is further ordered that a decision on Harmer's IFP application (ECF No.

22) is deferred.

It is further ordered that Harmer has 30 days from the date of this order to file an amended complaint in the new case, containing only his own claims.

The Clerk of Court is further directed to send Harmer the approved form for filing a § 1983 complaint, instructions for the same, and a copy of the joint complaint. (ECF No. 1-1 at 1–52.)

It is further ordered that, if Harmer does not file an amended complaint containing only his own claims in the new case within 30 days, the new action will be subject to dismissal without prejudice.

It is further ordered that Harmer's motion to substitute (ECF No. 20) is denied as moot.

DATED: June 23, 2025.

_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE