UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

DANIEL RIGGS,

              Plaintiff,

   v.

SCOTT DAVIS, et al.,

              Defendants.

Case No. 3:24-cv-00443-ART-CLB

ORDER

Plaintiff Daniel Riggs is an inmate at the Lovelock Correctional Center ("LCC") and a practicing Catholic who also leads bible study for Latter-day Saints. He brings several claims alleging that the change in the LCC Chapel schedule amounts to an impermissible infringement on his religious rights. (ECF Nos. 32, 33). Before the Court is Mr. Riggs' motion for a temporary restraining order and for preliminary injunction, requesting the Court order the Nevada Department of Corrections ("NDOC") (1) to provide Chapel access on Sundays for the Catholic inmates and Latter-day Saint inmates, (2) to provide an additional time slot each for Catholic inmates and Latter-day Saint inmates for musical liturgy and Bible study, in addition to the two other time slots that those groups already receive for religious observance, and (3) to order that offenders can attend all three services without the necessity to kite or sign up for the services. (*Id.*)

Interested Party NDOC responded on behalf of Defendants (ECF No. 36), and Mr. Riggs replied, (ECF No. 39). United States Magistrate Judge Carla L. Baldwin issued a Report and Recommendation ("R&R") recommending denial of Mr. Riggs' preliminary injunction. (ECF No. 41.) Plaintiff filed an objection. (ECF No. 42.) Interested Party NDOC responded, (ECF No. 45), and Mr. Riggs replied,

(ECF No. 46). For the reasons identified below, the Court overrules Mr. Riggs' objection, adopts the R&R, and denies the motions for a temporary restraining order and for a preliminary injunction. (ECF Nos 32, 33.)

## I.    Factual and Procedural Background

Mr. Riggs is an inmate currently in the custody of NDOC. Mr. Riggs sues Defendants James Dzurenda, Charles Daniels, Tim Garrett, Nethanjah Breitenbach, Kara LeGrand, Scott Davis, Lt. Preston, Lt. Clark, Lt. Harroun, Lt. Martin, Lt. Gentry, Senior CO Govea, Senior CO Etcheberry, Senior CO Wilcoxen, Senior CO Hensley, CO Martinez (collectively referred to as "Defendants") for alleged events that took place while Riggs was incarcerated at the Lovelock Correctional Center ("LCC"). (ECF No. 31 at 1.)

Mr. Riggs's complaint asserts several claims under the Free Exercise and Establishment Clauses of the First Amendment, Equal Protection Clause of the Fourteenth Amendment, and Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. 2000cc ("RLUIPA") in relation to his ability to practice his Catholic faith at LCC. (*See id.*) Mr. Riggs contends that as a Catholic, he has a religious obligation to also attend Latter-day Saint ("LDS") services because he has a sincere religious belief that he has "a duty to stand with all oppressed Christians." (*Id.* at 11.)

Mr. Riggs alleges that beginning in 2018, LCC effectuated a chapel schedule that severely limited services for several faith groups, including Catholic, Latter-day Saint, Episcopalian, The Way, and Muslim groups. (*Id.* at 13.) In response, two lawsuits were filed against Defendants, *Shaw v. Davis*, 3:18-cv-00551-MMD-CLB, and *Elmajzoub v. Davis*, 3:19-cv-00196-MMD-CSD.[1]

---

[1] Mr. Riggs moves the Court to take judicial notice of these cases. Federal Rule of Evidence 201(b) permits a court to notice an adjudicative fact if it is "not subject to reasonable dispute." Fed. R. Evid. 201(b). A fact is "not subject to reasonable dispute" if it is "generally known" or "can be accurately and readily determined

Relevant to Mr. Riggs' case, in 2017, the Chapel was open seven days a week, and Catholic practitioners had Sunday mass, rosary, and Bible study and LDS practitioners had Sunday Sabbath, music practice, Bible study, and "LDS Family Home Evening" on different days. *Shaw*, 3:18-cv-00551-MMD-CLB, (ECF No. 72-3 at 2).

In 2020, before the conclusion of those suits, LCC closed the Chapel and cancelled all religious services in response to the COVID-19 pandemic. (ECF No. 31 at 15.) Religious services were recontinued around August 2021 with a new schedule that permitted services in "activity rooms" of individual housing units, limited to inmates that were assigned to those units. (*Id.* at 16.)

The *Shaw* and *Elmajzoub* lawsuits resulted in subsequent changes to the chapel schedule beginning in 2022. (*Id.* at 18.) *Elmajzoub v. Davis* resulted in a permanent injunction on November 9, 2022, requiring Defendants to schedule weekly Jumu'ah services at LCC on Fridays from 12:30 p.m. to 1:45 p.m. *Elmajzoub*, 3:19-cv-00196-MMD-CSD, 2022 WL 18587817, at *2 (D. Nev. Oct. 4, 2022). *Shaw v. Davis* concluded with a settlement on March 6, 2023, that resulted in the current Chapel schedule. *Shaw*, 3:18-cv-00551-MMD-CLB, (ECF No. 329). This schedule is what Mr. Riggs now disputes. (ECF No. 31 at 18-19.)

Through every development in the chapel schedule (with the exception of the Chapel closure during the COVID-19 pandemic) Catholic and LDS faith groups had a time slot on Sunday for mass, even if they no longer had other "ancillary services." (ECF No. 39 at 8.) Under the current schedule, neither Catholic nor LDS faith groups, nor any other faith group, have a time slot on Sunday for mass. (ECF No. 36-5 at 2.)

---

from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)–(2). The authenticity of the Chapel schedule, settlement, and injunctive relief in both cases is not in question because they are referenced by both parties in their briefing. Therefore, the Court takes judicial notice of the 2018-2022 Chapel schedules, settlement agreement, and injunctive relief in both cases.

The Chapel has two rooms. (ECF No. 33 at 5.)  Catholic practitioners have a time slot for Level 2/3 inmates on Thursday in one room between 8:00-9:15 a.m. and a time slot for Level 1 inmates on Thursday in one room between 12:30-1:45 p.m. (ECF No. 36-5 at 2.) LDS practitioners have a time slot for Level 2/3 inmates on Monday in one room between 9:15-10:30 a.m. and for Level 1 inmates on Thursday in one room between 7:30-8:45 p.m. (*Id.*) Mr. Riggs claims that the time slot reserved for Catholic practitioners conflicts with several secular programs at LCC including the dog program and Structured Living Program. (ECF No. 33 at 22.) These conflicts, in his view, have reduced attendance at weekly services by about half. (*Id.*)

Episcopalians have two back-to-back time slots on Tuesday evenings in both Chapel rooms for Level 1 inmates: 7:30-8:45 p.m. and 8:45-9:45 p.m. (*Id.*) Similarly, The Way has two back-to-back time slots on Thursday evenings in one room for Level 1 inmates: 7:30-8:45 p.m. and 8:45-9:45 p.m. (*Id.*)

Mr. Riggs contends that as a Level 1 inmate, he is only able to attend one service per week, while Episcopal and The Way practitioners have two time slots reserved for Level 1 inmates per week. (ECF No. 39 at 14.)

Mr. Riggs has now filed a motion for temporary restraining order and preliminary injunction alleging the change in the LCC Chapel schedule amounts to an impermissible infringement on his religious rights. (ECF Nos. 32, 33.) Specifically, Mr. Riggs argues that the practice of his faith is substantially burdened because he is no longer able to attend a Sunday Mass or Sunday Sabbath with the Catholic or LDS faith groups like he did before the 2023 schedule, attend a dedicated music practice, and attend Bible study.

In his motion Mr. Riggs requests an order requiring NDOC:

1. To provide use of the Chapel's main room on Friday, August 15, 2025, for the Feast Day of the Assumption of the Virgin Mary;

2. to provide the Chapel for Sunday Mass for the Catholic practitioners;

3. to provide Thursday afternoon access and evening access to the Chapel for Catholic Bible study and musical liturgy for Catholic practitioners;

4. to provide the Chapel for Sunday Sabbath to the LDS practitioners;

5. to provide Monday evening access to the Chapel for music practice and Bible study for LDS practitioners;

6. to provide Tuesday evening access to the Chapel for Bible study for LDS practitioners;

7. to allow all inmates currently signed up for Catholic or LDS faith services to attend all available services for their faith without the necessity to kite or sign up for the services more than once. (*Id.*)

## II.    Legal Standard:

### A. Preliminary Injunction

The purpose of a preliminary injunction or temporary restraining order is to preserve the status quo if the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the action are ultimately determined. *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). A preliminary injunction is an "extraordinary and drastic remedy" that is "never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (citations omitted). A party seeking a preliminary injunction must demonstrate (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm if preliminary relief is not granted, (3) the balance of equities is in their favor, and (4) an injunction is in the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

A plaintiff who seeks a mandatory injunction—one that goes beyond simply maintaining the status quo during litigation—bears a "doubly demanding" burden: "[he] must establish that the law and facts clearly favor [his] position, not simply that [he] is likely to succeed." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc). The Ninth Circuit has cautioned that mandatory

5

injunctions are "particularly disfavored" and "should not issue in doubtful cases." *Id.* (internal quotations omitted).

The Prison Litigation Reform Act ("PLRA") similarly instructs that any restraining order or preliminary injunction granted with respect to prison conditions "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). Thus, section 3626(a)(2) limits the Court's power to grant preliminary injunctive relief to inmates. *Gilmore v. California*, 220 F.3d 987, 998 (9th Cir. 2000). "Section 3626(a)(2) . . . operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators — no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." *Id.* at 999.

**B. Review of Reports and Recommendations**

Under the Federal Magistrates Act, a court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by [a] magistrate judge." 28 U.S.C. § 636(b)(1). Where a party timely objects to a magistrate judge's report and recommendation, then the court is required to "make a *de novo* determination of those portions of the [report and recommendation] to which objection is made." 28 U.S.C. § 636(b)(1). A court is not required to conduct "any review at all . . . of any issue that is not the subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1985). Mr. Riggs objected to the R&R. (ECF No. 42.) Therefore, the Court reviews the R&R *de novo* for those subjects that Mr. Riggs objected to.

**III.    Analysis**

The R&R concluded that Mr. Riggs failed to show a likelihood of success on the merits or irreparable harm related to his Chapel schedule requests under the doubly strict standard for a mandatory injunction under the PLRA. (ECF No. 41.)

6

Specifically, the magistrate judge found that although the Chapel schedule's substantial burden on Mr. Riggs's ability to practice his religious beliefs is not seriously in question, he requested that Catholic and LDS practitioners receive more time than other faith groups and failed to show that the Chapel schedule had a tendency to coerce him into acting contrary to his religious beliefs. (*Id.* at 7.) Additionally, she found that Defendants had a compelling interest in a fair and equitable Chapel schedule while considering the different security tiers and protective custody status and demonstrated that it had "meaningfully considered and rejected the efficacy of less restrictive measures before adopting the challenged practice." (*Id.* at 8 (quoting *Warsoldier*, 418 F. 3d at 999).)

In his objection, Mr. Riggs argues that (1) the magistrate judge's "failed to understand the relief sought;" (2) applied the wrong legal standard for a preliminary injunction; (3) erred by applying the PLRA standard to his claims under RLUIPA and 42 U.S.C. § 1985(3); and (4) erred in concluding that he failed to show likelihood of success and irreparable harm for his RLUIPA claim. (*Id.*)

Mr. Riggs is correct that the Government's response to his objection (ECF No. 45) uses the wrong legal standard for challenging objections to R&Rs, which are analyzed under *de novo*, not clearly erroneous, review. The Court will take into consideration the Government's responses under the proper standard.

Mr. Riggs does not object to the conclusion that Chapel access for Feast Day of the Assumption of the Virgin Mary is moot, and therefore, this Court adopts the R&R to the extent that it denies that relief.

### a. Objection 1: Misunderstanding of the Relief Sought

Mr. Riggs objects that it was improper for the magistrate judge to only address the subset of relief sought by the TRO, and that his motion in fact requested preliminary relief for all the claims in the complaint. (ECF No. 42 at 3.) While it is true that in his motion for preliminary injunction, Mr. Riggs states that he "incorporates . . . by reference" the injunctive relief sought in his first amended

complaint (ECF No. 33 at 3), he only argues the *Winters* factors and legal analysis for RLUIPA. (*See id.*, generally.) Contrary to his objection, Mr. Riggs did not "argue[] likelihood of success on each of the claims in his complaint." (ECF No. 42 at 7.) Therefore, this objection is overruled. The Court will consider the merits of Mr. Riggs' RLUIPA claim for purposes of a preliminary injunction.

### b. Objection 2: Legal Standard for Preliminary Injunction

Mr. Riggs objects that the magistrate judge erred in not applying the test for a preliminary injunction under *Nike, Inc. v. McCarthy*, 379 F.3d 576, 580 (9th Cir. 2004) (requiring a plaintiff seeking a preliminary injunction to show "either (1) a likelihood of success on the merits and the possibility of irreparable injury, or (2) the existence of serious questions going to the merits and the balance of hardship.") The Court finds that the magistrate judge appropriately applied the *Winter v. National Res. Def. Council* test because it is a Supreme Court case decided after *Nike. Inc.*, and is therefore precedential. 555 U.S. 7 (2008); *see also Jones v. Foster*, No. 3:13-cv-00187-RCJ-WGC, 2015 WL 149854 at *2 ("The Ninth Circuit has since found that post-*Winter*, this circuit's sliding-scale approach, or 'serious questions' test 'survives ... when applied as part of the four-element *Winter* test.') "The sliding scale approach. . . does not relieve the movant of the burden to satisfy all four prongs for the issuance of a preliminary injunction." *Piper v. Gooding & Company, Inc.*, 334 F.Supp.3d 1009, 1021 (D. Ariz. 2018). Additionally, because Mr. Riggs is seeking a mandatory injunction, "[a]n even more stringent standard is applied." *Jones*, 2015 WL 149854 at *2. "In general, mandatory injunctions are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages." *Palmer Kearney Mesa Properties, LP v. City of San Diego*, No. 23-cv-1755-DMS-DTF, 2025 WL 2442867 at *3 (S.D. Cal. 2025) (internal citation omitted). Therefore, the Court overrules this objection.

### c. Objection 3: Legal Standard for Preliminary Relief Under the PLRA

Mr. Riggs objects that the R&R analyzes his claims for relief under the standard of the PLRA, which states that Section 3626(a)(2) of the statute limits the equity jurisdiction of courts such that they may not "grant or approve relief that binds prison administrators to do more than the constitutional minimum." *Gilmore v. California*, 220 F.3d 987, 998 (9th Cir. 2000); (ECF No. 42 at 5.) He argues that this standard is incorrect because he not only requests relief under the First and Fourteenth Amendments, but also under RLUIPA and 42 U.S.C. 1985(3). The PLRA's injunctive relief standard applies to all civil actions concerning prison conditions, and therefore applies to RLUIPA and section 1985 claims. 18 U.S.C. § 3626(a)(2); *see Rouser v. White*, 707 F. Supp. 3d 1055, 1071 (E.D. Cal. 2010) (applying PLRA scope of relief analysis to RLUIPA claim). Therefore, the Court overrules this objection.

### d. Objection 4: Likelihood of Success on the Merits of RLUIPA Claim

Mr. Riggs objects to the magistrate judge's conclusions on his likelihood of success on the merits on both prongs of the RLUIPA analysis. (ECF No. 42 at 7.) He argues he has demonstrated that the LCC Chapel schedule placed a substantial burden on his ability to practice his beliefs, and that Defendants have failed to offer any legitimate compelling interest or meaningful effort to consider less restrictive means of accomplishing their goals. (*Id.* at 9.) He adds that he does not believe he is requesting more time for Catholic and LDS practitioners than other faith groups. (*Id.* at 7-8.)

Under RLUIPA, the government may not impose a substantial burden on the religious exercise of an inmate unless that burden furthers a "compelling governmental interest" and does so by "the least restrictive means." 42 U.S.C. § 2000cc-1(a)(1)–(2). RLUIPA must be "construed broadly in favor of protecting an

9

inmate's right to exercise his religious beliefs." *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005) (citing 42 U.S.C. § 2000cc–3(g)). "RLUIPA defines 'religious exercise' as 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief.'" *Shakur v. Schriro*, 514 F.3d 878, 888 (9th Cir. 2008) (quoting § 2000cc–5(7)(A)). *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc). If Mr. Riggs establishes the prima facie existence of such a substantial burden, on which he bears the burden of persuasion, the Government shall bear the burden of persuasion to prove that any substantial burden on his exercise of his religious beliefs is both "in furtherance of a compelling governmental interest" and the "least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc–1(a); § 2000cc–2(b); *Warsoldier*, 418 F.3d at 995.

As discussed, Mr. Riggs bears a "doubly demanding" burden because he seeks a mandatory injunction: "[he] must establish that the law and facts clearly favor [his] position, not simply that [he] is likely to succeed." *Garcia*, 786 F.3d at 740. The Court must be "extremely cautious about issuing a preliminary injunction" in these cases. *Arizona Dream Act Coalition v. Brewer*, 757 F.3d 1053, 1060 (9th Cir. 2014).

The Court finds that while Mr. Riggs states the elements for a successful RLUIPA claim, he has not demonstrated that the law and facts clearly favor his position sufficient for a mandatory injunction under the PLRA. *See Garcia*, 786 F.3d 733.

### i. **Substantial Burden**

Mr. Riggs seeks the changes to the existing chapel schedule for Catholic and LDS practitioners to allow Sunday Chapel access (requests nos. 2 and 4); additional time for Bible study (requests nos. 3, 5, and 6); and additional time for music practice and musical liturgy (requests nos. 3 and 5). He further seeks to allow inmates already signed up for Catholic and LDS services to attend all

available services without needing to kite or sign up more than once (request no. 7).[2] Mr. Riggs objects to the R&R's holding that the current Chapel schedule does not have a tendency to coerce him into acting contrary to his religious beliefs or exert substantial pressure on him to modify his behavior and violate his beliefs, because he has a religious duty to attend services on Sundays and participate in musical liturgy. (ECF No. 42 at 8.) The Government argues that Mr. Riggs has only demonstrated "mere inconvenience" because he is arguing that he should have more Chapel time than other faith groups. (ECF No. 36 at 9.)

A substantial burden on an individual's belief occurs when the state puts "substantial pressure on an adherent to modify his behavior and violate his beliefs." *Hartmann v. Cal. Dept. of Corrections and Rehabilitation*, 707 F.3d 1114, 1125 (9th Cir. 2013) (citing *Warsoldier*, 418 F.3d at 995). The Ninth Circuit does "not take a narrow view of what constitutes 'substantial burden.'" *Johnson v. Baker*, 23 F.4th 1209, 1215 (9th Cir 2022). In evaluating the burden, the Court looks at "the regulation's effect on the specific religious practice at issue . . . not whether the RLUIPA claimant is able to engage in other forms of religious exercise." *Id.* at 1216 (citing *Holt v. Hobbs*, 574 U.S. 352, 361 (2015)). The question of substantial burden is generally better resolved at summary judgment. *Quezada v. Long*, No. EDCV 15-613-VBF (KS), 2016 WL 11755055, at *9 (C.D. Cal. Dec. 19, 2016) (citing *Bishop v. Jesson*, No. 14-1898 (ADM/SER), 2016 WL 8674584, at *10 (D. Minn. Feb. 12, 2016) (determination of substantial burden is better decided after the development of a factual record rather than in the context of a motion to dismiss).

a. **Sunday Chapel Access**

Mr. Riggs argues that it is a tenant of Catholicism and LDS doctrine that

---

[2] Because Mr. Riggs does not argue that his request for relief regarding kiting for religious services imposes a substantial burden upon his religion, the Court will not analyze this form of relief for the sake of this motion.

church services occur on Sundays, and therefore he is substantially burdened by only being able to attend services on Mondays and Thursdays. (ECF No. 33 at 21.) He compares his burden to that of the plaintiffs in *Elmajzoub v. Davis*, who succeeded in arguing that they were substantially burdened by the inability to attend Jumu'ah on early Friday afternoons. *Elmajzoub v. Davis*, No. 3:19-cv-00196-MMD-CSD, 2022 WL 1537346, at *9, (D. Nev. May 13, 2022). He also argues that secular programming and paying work assignments occur during Catholic mass on Thursday afternoons, forcing individuals to choose between Mass or other opportunities. (ECF No. 33 at 22.)

The Government argues that Mr. Riggs has not shown how the current chapel time constitutes conduct on the part NDOC employees to coerce Mr. Riggs in acting contrary to his beliefs; rather, he has only shown a mere inconvenience. (ECF No. 36 at 8; citing *Jones*, 791 F.3d at 1031-32.) The Court finds Mr. Riggs is likely to show that restricting his ability to practice his faith on Sundays is a substantial burden, because it creates an "outright ban" on a particular religious exercise. *See Greene v. Solano Cnty. Jail*, 513 F.3d 982, 988 (9th Cir. 2008).

### b. **Music Practice and Musical Liturgy**

Mr. Riggs also argues that "errors in the musical liturgy," caused by not having a separate music practice, put a substantial burden on his religious exercise because he sings along with the hymns. (ECF No. 33 at 23.) Because Mr. Riggs does not argue that he does not have access to musical liturgy, but merely higher quality musical liturgy, this is not a substantial burden on his faith. *Sterr v. Baptista*, No. CIV-S-08-2307-DOC, 2010 WL 500464 at *5 (E.D. Cal. Feb. 8, 2010), *aff'd*, 385 F. App'x 755 (9th Cir. 2010) (E.D. Cal. Feb. 8, 2010) (no substantial burden where schedule did not require plaintiff to abandon a religion exercise).

### c. **Bible Study**

Finally, Mr. Riggs contends that the cancellation of Catholic and LDS Bible

study burdens his ability to teach the faith (ECF No. 33 at 26). Mr. Riggs also does not argue that he cannot conduct Bible study in the slots that are already available to the Catholic and LDS faith groups on Mondays and Thursdays. Therefore, there is not a substantial burden on this religious exercise. *See Sterr*, 2010 WL 500464 at *5.

### ii. **Compelling Interest**

Assuming Mr. Riggs has met the standard for substantial burden as to Sunday chapel time, the burden then shifts to the Government to show that the policy was "in furtherance of a compelling governmental interest" and "the least restrictive means of furthering that compelling interest." 42 U.S.C. § 2000cc-1(a); *Holt*, 574 U.S. at 362. The Court finds that the Government has stated a compelling interest in maintaining a fair and equitable Chapel schedule.

Demonstrating a compelling interest is an "exceptionally demanding" standard, which requires the Government to "sho[w] that it lacks other means of achieving its desire goal without imposing a substantial burden on the exercise of religion by the objecting part[y]." *Holt*, 574 U.S. at 358. This is a "fact-intensive inquiry" that should be performed on a developed record. *Jones*, 23 F.4th at 1144. "[C]ontext matters in the application of the standard, and courts should act with 'due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources.'" *Jones*, 23 F.4th at 1141 (quoting *Cutter*, 544 U.S. at 723); *see also Johnson*, 23 F.4th at 1217 (prison security is a compelling state interest).

Mr. Riggs argues that the Government has not met its burden for a compelling interest because the Government should have sufficient resources to run both secular and faith-based programming. (ECF No. 33 at 28.) He objects to the R&R's conclusion on compelling interest to the extent that the Government previously provided the Sunday services he now requests and fails to explain why

the schedule changed in 2023. (ECF No. 42 at 8-9.)

The Government argues it has a compelling interest in the Chapel schedule being fair to all inmates and faith groups, and because services throughout the institution have spread thin limited staffing resources, a different schedule would cause safety and security concerns. (ECF No. 36 at 8.) It argues that Mr. Riggs' proposed relief of adding Sunday chapel time would provide more time slots to Catholic and LDS faith groups than other groups and giving all faith groups the same access that Mr. Riggs requests would be impossible with the resources available. (*Id.* at 9.) The Court will address each of the Government's interests in turn.

### a. Fairness

The Government argues that "LCC previously had a Chapel schedule that was not fair to all inmates and Faith Groups." (ECF No. 36.) Some groups had more time than others, and some groups were required to share Chapel time, "not allowing either faith group the reverence it needed to proceed with its practices in peace." (ECF No. 36-1.) The Government argues that Mr. Riggs' request for relief would disrupt the balance that it has struck to provide no more than two activities per faith group per week. (ECF No. 43 at 5.) It also argues that granting the injunctive relief sought could open up the Government to equal protection liability. (ECF No. 36 at 10.) Mr. Riggs contests the assertion that he is asking for more time than other groups, pointing to the two time slots that both Episcopal and The Way groups receive for Level 1 inmates on Tuesday and Thursday nights. (ECF No. 39 at 13-14.)

The Court finds the Government's interest in an equitable schedule compelling. For one, compliance with the Constitution can be a compelling state interest if there is "an objectively strong legal basis for believing that is the case." *Walker v. Beard*, 789 F.3d 1125, 1136 (9th Cir. 2015); *Al Saud v. Days*, 50 F.4th 705, 710-11 (9th Cir. 2022). Mr. Riggs himself includes an equal protection

challenge in his complaint for the alleged differences in the Chapel schedule at LCC. (ECF No. 31 at 37.) Ensuring that faith groups are given appropriate time is also mandated by AR 810 and Nevada state law. (ECF No. 36 at 2.) Therefore, the Government has met its burden to show a compelling interest for a fair Chapel schedule under RLUIPA.

### b. Resources for Staffing

The Court construes Defendants' reference to staffing resources as an argument about cost containment. Cost containment can be, but is not always, a valid compelling interest: Congress has stated that the RLUIPA "may require a government to incur expenses in its own operations to avoid imposing a substantial burden on religious exercise." 42 U.S.C. § 2000cc-3(c); *see also Rouser*, 630 F.Supp.2d at 1185 ("The court is aware of no authority . . . that has held that cost is a compelling government interest under RLUIPA when a prison policy or practice was at issue."). The Government does not offer any detailed information about the cost of opening the Chapel on weekends as requested by Mr. Riggs. *See Shakur*, 514 F.3d at 890 (finding that conclusory assertions about cost were insufficient to meet standard for compelling interest at summary judgment). The Court finds this is not a sufficiently compelling interest under RLUIPA.

### c. Safety and Security

The Government argues that adjusting the Chapel schedule would pose a safety and security challenge to ensure that services were appropriately supervised. (ECF No. 36-1.) Chaplain Davis does not work weekends, and the Government argues there are not sufficient personnel to cover and secure the Chapel on Sundays. (ECF No. 44 at 5.) Mr. Riggs counters that prior to the current schedule, "the chapel operated, when necessary, without the presence of either the chaplain or a prison guard" and only implemented pat-down procedures in or around 2023. (ECF No. 31 at 31-32; ECF No. 39 at 114-115.)

Courts do not grant "unquestioning deference" to the Government's claim of a general security interest. *Johnson*, 23 F.4th at 1217 (citing *Holt*, 574 U.S. at 363, 135 S.Ct. 853). "Prison officials must set forth detailed evidence, tailored to the situation before the court, that identifies the failings in the alternatives advanced by the prisoner." *Id.* at 1217 (citing *Warsoldier*, 418 F.3d at 1000). The Government merely states that "evidence abounded that inmates used the thin supervision to engage in illegal activity." (ECF No. 36 at 9.) This statement is conclusory and unsupported by the record at this time. Therefore, the Court finds this is not a sufficiently compelling interest.

### iii.   **Least Restrictive Means**

Assuming that the Government has met its burden of a compelling interest, it must show that they "actually considered and rejected the efficacy of less restrictive measures before adopting the challenged practice." *Warsoldier*, 418 F.3d at 999. "Although the government bears the burden of proof to show its practice is the least restrictive means, it is under no obligation to dream up alternatives that the plaintiff himself has not proposed." *Walker*, 789 F.3d at 1137. The R&R concludes "the Chapel schedule was implemented as the least restrictive means of accommodating all recognized Faith Groups while considering the different security tiers and protective custody status and was developed in part due to litigation with respect to the LCC Chapel schedule." (ECF No. 41 at 8.)

Mr. Riggs objects to the finding that NDOC pursued the least restrictive measures in creating the Chapel schedule, because it does not explain why it changed the schedule in 2023. (ECF No. 42 at 9.) He provides examples of the Government accommodating other faith groups' requests for services arising out of the *Shaw v. Davis* and *Elmajzoub v. Davis* litigation. (ECF No. 33 at 29.)

The Government distinguishes Mr. Riggs' case from *Elamjzoub v. Davis* and *Shaw v. Davis,* neither of which resulted in Sunday chapel time or more than two

meetings per week. In *Elamjzoub* the plaintiffs were requesting a time slot on a day where the Chapel was already open, Fridays. (ECF No. 36 at 9.) The settlement agreement in *Shaw v. Davis* provided one weekly Chapel service and activity room service for Episcopal and The Way faith groups. *Shaw v. Davis*, 3:18-cv-00551-MMD-CLB. In contrast, the Government claims Mr. Riggs is requesting three services for each faith group—two each during the week and one each on Sunday.

Additionally, Chaplain Davis' declaration establishes that he sought "to schedule the chapel in such a way that ensures all the religious groups have the opportunity to engage in religious services" and in accordance with AR 810. (ECF No. 36-1 at 3.) AR 810.01(4) says that "all limitations or prohibitions must be consistent with consideration of whether the limitations or prohibitions is in furtherance of a compelling government interest and is the least restrictive means of furthering that compelling government interest." (ECF No. 36-2 at 2.)

The Court finds that the Government has worked diligently over the last several years to develop an equitable schedule that is responsive to litigation and the needs of all inmates in accordance with AR 810. Therefore, the Government has met its burden to establish the least restrictive means under RLUIPA for the sake of a preliminary injunction.

Although Mr. Riggs states a solid claim under RLUIPA, he does not show that he *clearly* has a likelihood of success on the merits for the sake of a mandatory injunction. *See Garcia*, 786 F.3d at 740. Many of the inquiries performed under this analysis would be better served by a more developed factual record. The Court therefore overrules Mr. Riggs' objection to the R&R's conclusion on his likelihood of success on the merits.

### e. Objection 4: Irreparable Harm in RLUIPA Claim

Mr. Riggs objects to the magistrate judge's conclusion that he did not meet the standard for irreparable harm because the recommendation did not address

the Ninth Circuit's decision in *Shaw v. Davis*, 804 Fed.Appx 840, 841 (9th Cir. 2020). Mr. Riggs is correct that in that case, the Ninth Circuit found that by stating a cognizable claim under the First Amendment and RLUIPA, a plaintiff has established irreparable injury. *Id.* (citing *Warsoldier*, 418 F.3d at 1002) ("Because Warsoldier has, at a minimum, raised a colorable claim that the exercise of his religious beliefs has been infringed, he has sufficiently established that he will suffer an irreparable injury absent an injunction"). While the *Shaw* case is unpublished and therefore not precedential on this Court, the Court finds it persuasive, particularly given that it is considering a similar factual scenario regarding the Chapel schedule at LCC. *See also Pasaye v. Dzurenda*, 375 F. Supp. 3d 1159, 1170-71 (D. Nev. 2019) (finding that because RLUIPA expands on First Amendment protections, an alleged deprivation is sufficient to show irreparable injury). Therefore, the Court finds that Mr. Riggs has met the standard for irreparable harm, and Mr. Riggs' objection is sustained.

### f.   Balance of Equities and Advancing the Public Interest

The R&R does not analyze whether the balance of equities tips in his favor or if a preliminary injunction would advance the public interest after concluding that Mr. Riggs did not suffer irreparable harm. The Court will do so here.

"The third and fourth factors of the preliminary-injunction test—balance of equities and public interest—merge into one inquiry when the government opposes a preliminary injunction." *Porretti v. Dzurenda*, 11 F.4th 1037, 1050 (9th Cir. 2021) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)). "The 'public interest' mostly concerns the injunction's 'impact on nonparties rather than parties.'" *Id.* (quoting *Bernhardt v. L.A. Cnty.*, 339 F.33d 920, 931 (9th Cir. 2003)). The court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief," paying particular attention to the public consequences. *Winter*, 555 U.S. at 24 (citation omitted).

The Government argues that the balance of equities does not tip in Mr. Riggs favor because he has not shown a constitutional violation, still has access to the Chapel, and injunctive relief would mandate LCC to implement a schedule that could invite equal protection liability and further stretch staff resources while "micromanaging" the prison. (ECF No. 36 at 11.) It further argues that there is a public interest in the efficient operation of prisons by prison officials. (*Id.* at 12.) While courts have acknowledged the public interest in protecting constitutional rights, *see Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights.") (citation omitted), the public interest may not tip in favor of a plaintiff who has failed to show likelihood of success on the merits, especially when competing public interests are also at stake, *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) (acknowledging that public interest did not favor a plaintiff who did not show a likelihood of success on the merits of his First Amendment claim). So while there is a public interest in ensuring that RLUIPA's protections are afforded to inmates, including Mr. Riggs, at this stage the balance of equities and public interest tips slightly in favor of the Government.

### IV.   Conclusion

It is therefore ordered that Plaintiff's objection to Judge Baldwin's Report and Recommendation (ECF No. 42) is OVERRULED IN PART.

It is further ordered that Judge Baldwin's Report and Recommendation recommending denial of Plaintiff's motions for a preliminary injunction and temporary restraining order as moot (ECF No. 41) is ADOPTED IN PART.

It is further ordered that Plaintiff's motion for a preliminary injunction (ECF No. 33) is DENIED.

//

//

//

Dated this 25th day of March, 2026.

_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE